UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| KEVIN ALVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:17-cv-00213-RLY-DML |
| | ) | |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN ALVEY, | ) | |
| | ) | |
| Counter Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Kevin Alvey purchased a home for $17,500 in August of 2016. After a fire destroyed the home two months later, he sought over half a million dollars under his homeowner's policy from Allstate Vehicle and Property Insurance Company. Sensing insurance fraud, Allstate investigated the fire and ultimately denied Alvey's claim. None too pleased with the denial, Alvey sued Allstate alleging it breached the insurance policy and acted in bad faith. Because Allstate did not breach the terms of the policy as a matter

1

of law nor act in bad faith when denying Alvey's claim, the court **GRANTS** Allstate's Motion for Summary Judgment.

## I. Background

For years, Alvey managed his own construction business in southeast Indiana, accepting any jobs that would pay the bills. (Filing No. 70-2, Examination Under Oath of Kevin Alvey ("Alvey EUO.") at 21:19 – 22:17). In August of 2016, he decided to try something new: real estate. (*Id.* at 41:12 – 16; 44:22 – 45:2). Alvey purchased a foreclosed home in French Lick, Indiana for $17,500. (*Id.* 41:5 – 22). He spent the first few weeks making repairs and replacing some of the old infrastructure with the hopes of selling it for more money or renting it out. (*Id.* at 44:22 – 45:2; 50:14 – 16; 97:15 – 98:9).

Two months later, his plan went up in smoke—literally and figuratively. (*Id.* 72:4 – 9). A fire ravaged the home on October 21, 2016 around 8:30 a.m. (Filing No. 70-3, Sworn Statement in Proof of Loss at 1; Filing No. 70-1, Origin and Cause Report at 4). Alvey claimed he does not know who or what caused the fire, and he only learned about it after receiving a call from the state fire marshal. (Alvey EUO at 70:16 – 24;75:22 – 76:2). With his home reduced to ashes, Alvey turned to Allstate. (*See* Proof of Loss). He completed a sworn proof of loss and requested $537,758 for the loss of the home. (Proof of Loss at 1).

Allstate denied the claim because Alvey failed to provide a detailed list of damages, and so Allstate requested that he resubmit the proof of loss with the appropriate documentation (Filing No. 70-11, Allstate Letter to Alvey, Nov. 21, 2016). That was

not all though. Concerned with the possibility of insurance fraud, Allstate launched its own investigation. (Filing No. 70-12, Attorney Letter to Alvey, November 22, 2016).

The investigation raised some red flags. For starters, Nathan Bromen, Allstate's retained fire expert, classified the cause of the fire as incendiary and concluded that the fire originated in the middle of the second floor. (Origin and Cause Report at 8). The fire started when a handheld, portable ignition device ignited a petroleum-based liquid spread on the floor and hallway. (*Id.*). Pictures revealed a significant amount of straw (hay) located in the origin room as well as a sock soaked in ignition liquid. (*Id.* at 23 – 27). Translation: somebody intentionally started the fire. (*See id.* at 7).

Allstate then examined Alvey under oath and learned that he lied on his insurance application. (Alvey EUO at 108:15 – 17). He listed the purchase price as $200,000 and requested that the home be insured for $316,000 even though he only paid $17,500 for the home. (Filing No. 70-5, Application for Insurance at 4). When an Allstate agent recommended reducing coverage to $195,000 based on a visual site inspection, Alvey balked at this request. (Alvey EUO 104:5 – 19). Allstate also learned through the examination that Alvey could not produce the phone he was using leading up to the fire because it was lost or stolen. (Alvey EUO 15:12 – 17 (Q: Do you have the cell phone you were utilizing on the date of the fire? A: No. Q: Where is it? A: It was lost[] or stolen or – but I don't have it)). He also could not identify several phone numbers that called his phone on the day of the fire. (Alvey EUO 90:25 – 92:17).

When asked about his location on the day of the fire, Alvey explained that he traveled to Erlanger, Kentucky two days before the fire occurred to work on a retention

3

basin that he had started for one of his clients. (*Id.* at 56:3 – 57:3). On the way back to Indiana, Alvey's truck broke down in Carrollton. (*Id.* at 61:21 – 23). His parents picked him up and drove him to GEA Trucking, a friend's garage, in New Albany, Indiana. (*Id.* at 62:1 – 24; *see also* Filing No. 70-8, Report of Condit & Associates at 4). Alvey helped his friend, Denny Endres, with work around the garage the rest of the night and attempted to find a replacement part for his truck. (*Id.* at 63:7 – 25). The following day, Alvey drove back to Carrollton to pick up his truck, and that is when he received the phone call from the state fire marshal concerning the fire. (*Id.* at 64:5 – 9).

But this story did not entirely check out when Allstate investigated further. Kevin Sample, Alvey's client in Erlanger, explained that he employed Alvey to repair a retention basin, but the job was completed in April of 2015—a year and a half before Alvey's trip. (Filing No. 97-1, Affidavit of Kevin Sample ¶ 4). Sample has no record of any communications with Alvey since completion of the project and does not recall ever speaking with Alvey in October of 2016. (*Id.* ¶ 6). Additionally, Endres explained that Alvey showed up "in his pickup truck" when Alvey arrived at Endres's garage in New Albany. (Report of Condit & Associates at 4). Endres also said that Alvey was there to help out on a job because Alvey owed Endres money. (*Id.*).[1]

Alvey's financial situation gave Allstate more reason to pause. He claimed during his examination that his construction company averages between $175,000 and $250,000

---

[1] Allstate did not depose Endres. Instead, these comments come from a report generated by Condit & Associates, Inc., a private investigation firm hired by Allstate. The court does not consider the comments for their truth but considers them for the effect that they had on Allstate's decision to deny Alvey's claim, as they are relevant to Alvey's bad faith claim.

4

in income each year and that it earned approximately $200,000 in 2016. (*Id.* at 23:9 – 24:16). But Alvey refused to provide his tax returns to verify that income, (*Id.* at 11:9 – 12:7), and a subsequent records request from his personal and business bank showed that three out of four of his bank accounts were closed or inactive as of March of 2015. (*See* Filing No. 70-9, Woodforest National Bank Records). The one account that was active showed an account balance of $678.18. (Filing No. 70-10, Genesis Construction Account Records). Alvey could not point to any other active accounts and told Allstate that he mostly used cash. (Alvey EUO at 35:11 – 17).

After the examination under oath, Allstate followed up with Alvey concerning an itemized list of losses. (Filing No. 70-13, Attorney Letter to Alvey, January 23, 2017). He never submitted one. He simply sought the maximum amount of coverage under the policy. (*Id.*; Alvey EUO at 128:9 – 18 (Q: [H]ave you gotten far enough on your contents inventory that you can estimate for us the amount of money you are claiming for personal property? A: No. Like I said, I'm going to try to get as close to a high number as I can get[.])).

Allstate eventually denied Alvey's claim. (*See* Filing No. 70-14, Allstate Denial Letter). The denial was based on Allstate's opinion that Alvey intentionally burned down his home to collect on the insurance proceeds. (*Id.* at 5). Allstate also denied Alvey's claim because he made material misrepresentations during the application and claims process, and he failed to submit the necessary documents to prove his claim. (*Id.*).

Alvey filed this lawsuit on October 20, 2017.[2] (Filing No. 1-2). Allstate removed the case to federal court on November 16, 2017. (Filing No. 1). Alvey alleges that Allstate breached the insurance policy by failing to reimburse him for the loss of the home. (Filing No. 1-2). He also alleges Allstate engaged in bad-faith by denying him coverage. (*Id.*). Allstate filed a counterclaim seeking a declaratory judgment that there was no coverage under the policy. (Filing No. 6). Allstate moved for summary judgment on January 25, 2019. (Filing No. 66).

## II. Legal Standard

Rule 56 authorizes the court to grant summary judgment to a party when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 578 (7th Cir. 2019). To stave off summary judgment, non-moving parties must present enough evidence to create a genuine question of fact with respect to all elements of their claims. *Burton*, 934 F.3d at 578. A genuine question of fact exists only when a rational factfinder could return a verdict in favor of the non-moving party. *Id.*; *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1168 – 69 (7th Cir. 2013). The evidence is viewed in the light most favorable to the non-moving party. *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049, 1054 (7th Cir. 2019).

---

[2] At the time, Alvey was represented by counsel. However, counsel withdrew later in the case. (Filing Nos. 29, 31).

## III. Discussion

Much of the parties' debate focuses on whether Alvey intentionally burned down the home. After all, the policy excludes coverage for intentional acts of the insured and that is one of the reasons why Allstate denied coverage. But rarely is this issue appropriate for summary judgment because the insured almost always denies involvement, and so there is a question of fact as to whether the fire was caused by the insured. *See e.g. Lummis v. State Farm Fire & Cas. Co.*, 469 F.3d 1098, 1100 (7th Cir. 2006) (affirming grant of summary judgment on bad faith claim and *jury verdict* on breach of contract claim in denial of insurance benefits case where there were arson allegations); *Lottie v. West American Ins. Co.*, 248 F. App'x 734, 742 (7th Cir. 2007) (same); *Thorne v. Member Select Ins. Co.*, 899 F.Supp.2d 820, 827 (N.D. Ind. 2012) (granting summary judgment on bad faith claim, but denying summary judgment on breach of contract claim). Although the amount of circumstantial evidence against Alvey is overwhelming, he denied involvement, and there is at least some evidence that he was away from the location at the time of the fire. On that (razor-thin) evidence, the court declines to find that no reasonable jury could find in Alvey's favor. *See Thorne*, 899 F.Supp.2d at 826 (denying insurer summary judgment even though the possibility a jury would find that the plaintiff was not involved in the fire was "extremely remote").

That does not mean, however, summary judgment is inappropriate. The undisputed evidence shows that Allstate did not breach the insurance policy, and no reasonable juror could find that Allstate acted in bad-faith when denying Alvey coverage. More on those points now.

7

### A. Alvey Breached the Insurance Policy by Making Material Misrepresentations and Failing to Comply with the Claims Process

An insurance policy is a contract. *Briles v. Wausau Ins. Companies*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006) (citations omitted). The construction of a contract is a question of law. *Motorists Mut. Ins. Co. v. Wroblewsk*, 898 N.E.2d 1272, 1275 (Ind. Ct. App. 2009) (citations omitted).

Here, the insurance policy provides that Allstate "may void [the] policy if it was obtained by misrepresentation, fraud or concealment of materials facts," and Allstate does "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Filing No. 70-18, Insurance Policy at 11). The policy also explains in the event of a loss, the insured must submit (1) a "detailed list of the damaged, destroyed, or stolen property showing the quantity, cost, actual cash value and the amount of loss claimed" and (2) a sworn proof of loss statement that includes "the actual cash value and amount of loss for each item damaged, destroyed or stolen." (*Id.* at 14). Otherwise, Allstate has "no duty to provide coverage." (*Id.*).

Based on those two provisions, Allstate did not breach the policy as a matter of law when it denied Alvey's claim. Alvey admitted that he lied about the purchase price of the home—stating that it was $200,000 when it was only $17,500. (Alvey EUO at 108:15 – 17). Alvey also represented that the market value of the home was worth $316,000, but that too was a misrepresentation: no rational juror could conclude that the home was worth that much based on the home's condition, even before the fire. (*See* Origin and Cause Report at 11 – 16; Alvey EUO at 43:19 – 45:11; 50:1 – 55:14). Worse,

when Allstate offered to reduce the amount of coverage, Alvey shunned Allstate's request. (Alvey EUO 104:5 – 19). Simply put, Alvey inflated the value of the home and sought to recover the maximum amount under the policy. Allstate was within its contractual rights to void the policy based on Alvey's misrepresentations.

It is also undisputed that Alvey did not comply with Allstate's requests during the claims process. Alvey never submitted a "detailed list of the damaged, destroyed, or stolen property showing the quantity, cost, actual cash value and the amount of loss claimed." (Insurance Policy at 14). Nor did Alvey submit "the actual cash value and amount of loss for each item damaged, destroyed or stolen." (*Id.*). Quite the opposite. Alvey admitted that he simply combined the maximum amount of coverage possible because he wanted "to try to get as close to a high number as possible." (Alvey EUO at 128:9 – 18). On top of that, Alvey refused to produce the tax returns of his construction company. That was a reasonable request based on Alvey's representation that his business grossed $200,000 in 2016, yet his bank account only showed a balance of $678.18. (Genesis Construction Account Records at 1). *See also Wood v. Allstate Ins. Co.*, 21 F.3d 741, 747 (7th Cir. 1994) (noting an insured's financial condition is important when there are arson allegations). Alvey's failure to cooperate during the claim's process was another ground on which Allstate was entitled to deny coverage.[3]

---

[3] Alvey produced a one-page page bank document purporting to show his construction bank account had more than $600 dollars in it. (Filing No. 88-9). But the document only shows what looks like transactions on June 13, 2016 and June 14, 2016. No other pages are attached. This is insufficient to create a question of fact. Likewise, Alvey attached two insurance estimates for the home. (Filing Nos. 88-10 and 88-11). But these estimates were prepared by him and do not otherwise establish a genuine need for trial.

9

### B. Allstate Did not Act in Bad Faith

Insurers must deal with their insureds in good faith. *Thorne*, 899 F.Supp.2d at 826 (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993)). Bad faith exists when there is clear and convincing evidence that an insurer denied a claim when it knows there is no rational, principled basis for doing so. *Thorne*, 899 F.Supp.2d at 826 (citing *Freidline v. Shelby Ins. Co.*, 774 N.E. 2d 37, 40 (Ind. 2002)).

Here, no rational juror could find Allstate acted in bad faith when denying Alvey's claim. Allstate possessed overwhelming evidence that Alvey was involved in the fire: Bromen's conclusion that the fire was intentional, Alvey's misrepresentations during the application and claims process, the disparity between the home's value and the amount of coverage sought, the contradicting testimony related to Alvey's location, and Alvey's bleak financial situation. Of course, Alvey may *not* have been involved. But the operative question, here, is simply whether Allstate reasonably concluded so. Based on the circumstantial evidence, Allstate had a rational basis for denying Alvey's claim; no rational juror could find otherwise. *See Thorne*, 899 F.Supp.2d at 827; *see also Hoosier Ins. Co., Inc. v. Mangino*, 419 N.E.2d 978, 987 (Ind. Ct. App. 1981).

## IV. Conclusion

For the reasons stated above, Allstate's Motion for Summary Judgment (Filing No. 66) is **GRANTED**. Because there is no coverage under the Policy, the court **GRANTS** summary judgment to Allstate on its counterclaim. All remaining motions (Filing Nos. 68, 79, 90, and 94) are **DENIED as MOOT**. Final judgment shall accompany this Entry.

**SO ORDERED** this 30th day of September 2019.

								_____
								RICHARD L. YOUNG, JUDGE
								United States District Court
								Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.